## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 06 2015, 9:33 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald J. Frew
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of: S.H., A Child in Need of Services,

M.H.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

March 6, 2015

Court of Appeals Case No. 02A04-1408-JT-370

Appeal from the Allen Superior Court

The Honorable Thomas P. Boyer, Judge Pro Tempore
The Honorable Lori K. Morgan, Magistrate

Cause No. 02D07-1312-JT-153

**Najam, Judge.**

## Statement of the Case

M.H. ("Father") appeals the trial court's termination of his parental rights over S.H. ("Child").[1] Father raises a single issue for our review, namely, whether the trial court's judgment is clearly erroneous. We affirm.

## Facts and Procedural History

On August 13, 2012, the trial court adjudicated Child to be a child in need of services ("CHINS") on the petition of the Indiana Department of Child Services ("DCS"), and the court placed Child in foster care. At that time, Father admitted that Child was residing with him; that he had no running water in his home; that he was unable to care for Child; and that he was unable to provide independent, sustainable housing for Child. And a family case manager informed the court that Father's home had trash, clothing, and debris throughout it, "as well as a jug of urine." DCS Ex. 4 at 2. Among other things, the court ordered Father to maintain clean, safe, and sustainable housing at all times, refrain from using drugs, submit to drug tests, and attend and appropriately participate in all visits with Child as directed.

During the ensuing months, Father was involved in several misdemeanor offenses, which included "flying . . . a homeless sign . . . on the road" and

---

[1] Although the Child's mother also had her parental rights terminated by the trial court's judgment, she does not participate in this appeal.

possession of paraphernalia. Tr. at 87. Father admitted to possession of marijuana in connection to the paraphernalia offense. He also failed several drug tests and refused to take at least one drug test.

[4]     Father never obtained stable housing. He described his living situation during the underlying proceedings as "couch surfing," though he occasionally stayed at hotels. *Id.* at 71. Father also missed some visitation time with Child. On occasions where visitation was cancelled for a legitimate reason, Father did not attempt to make up the cancelled visitation. Meanwhile, Child remained in the same foster home throughout the underlying proceedings.

[5]     On December 13, 2013, DCS filed its petition for the termination of Father's parental rights over Child. The court held an evidentiary hearing on the DCS's petition on April 8, 2014. At that hearing, the DCS explained that it planned to have Child adopted. While Child had not yet been placed in a preadoptive home, Child's guardian ad litem ("GAL") testified that "that's not something that we can cho[o]se ahead of time. . . . [W]hen you place a child in a licensed foster parent's home[,] they don't know at that point whether they are going to want to adopt or not . . . ." *Id.* at 140. The GAL further agreed that it is "in the best interests of [C]hild to have this plan for care and treatment of adoption in place." *Id.*

[6]     On April 28, the court entered its order terminating Father's parental rights. In relevant part, the court found as follows:

Presently, [F]ather does not have stable housing. He has not had stable housing since the initiation of the CHINS proceedings . . . . During this timeframe, he has lived with friends, lived in a halfway house[,] and lived in hotels. Currently, he is living in a hotel and receives vouchers for his stay from the Fort Wayne Housing Authority and Washington Township Trustees office. At trial, he advised that he anticipated in enrolling in IVY Tech in the near future and that he would use his school money to buy a trailer for himself and [Child]. He did acknowledge at trial[,] however, that he had used school monies in the past to pay for housing and other expenses. He does not presently have employment and has not consistently had employment since the initiation of the CHINS proceedings in 2012. Although [F]ather may have housing, employment[,] and money from school loans from time to time, his history and patterns of conduct reveal an inability to maintain a home for himself and [C]hild.

 . . . [F]ather has not refrained from criminal activity during the course of the underlying CHINS proceedings. In 2014, he was arrested for possession of paraphernalia. At trial [here], he claimed that his friend left a marijuana pipe in his backpack. However, [he] had a positive test for marijuana a few months before the start of [this] hearing . . . . Additionally, he acknowledged refusing to submit to a drug screen in February of 2014.

At the time of the initiation of the proceedings in the underlying CHINS cause, [F]ather was unable to provide a safe, stable home environment for [C]hild. At the time of the hearing on the Petition for Termination . . . , [F]ather continued to be unable to provide for [C]hild . . . .

* * *

6. The [DCS] has a satisfactory plan for the care and treatment of [C]hild, which is placement of [C]hild for adoption.

Appellant's App. at 25-26. This appeal ensued.

## Discussion and Decision

Father appeals the trial court's termination of his parental rights. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, in relevant part:

(A) that one (1) of the following is true:

(i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.

\* \* \*

(B) that one (1) of the following is true:

(i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).  That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights.  DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'"  *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[9] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[10] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[11] Father's only argument on appeal is that the DCS failed to demonstrate a satisfactory plan for the care and treatment of Child following the termination of Father's rights. *See* I.C. § 31-35-2-4(b)(2)(D). Father concedes that the DCS demonstrated a reasonable probability that the conditions that resulted in

Child's removal will not be remedied as well as a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Child. And Father does not argue on appeal that the termination of his parental rights is not in the best interests of Child.

[12] We reject Father's argument on appeal. As we have made clear:

> For a plan to be "satisfactory," for purposes of the statute, it need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. . . . Attempting to find suitable parents to adopt the children is clearly a satisfactory plan. The fact that there was not a specific family in place to adopt [at the time of the termination hearing] does not make the plan unsatisfactory. We also find that the continuing independent living situation . . . is an acceptable plan as it gives a general sense of the direction of the treatment and care that [a child] would receive.

*Lang v. Starke Cnty. Ofc. of Family & Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007) (citations and quotations omitted), *trans. denied*.

[13] *Lang* controls the outcome here. Despite Father's arguments to the contrary on appeal, the DCS plainly presented sufficient evidence of a satisfactory plan for the care and treatment of Child. The GAL testified that Child had been placed in a continuing, independent living situation with foster parents following the trial court's determination that Child was a CHINS. The GAL further testified that the DCS was in the process of finding suitable parents to adopt Child. The fact that there was not a specific family in place at the time of the termination hearing does not render the DCS's plan unsatisfactory. Moreover, Father's

arguments on appeal are merely requests for this court to reweigh the evidence, which we will not do. Thus, we affirm the trial court's termination of Father's parental rights.

[14] Affirmed.

[15] Mathias, J., and Bradford, J., concur.